NOTE:  Pursuant to Fed. Cir. R. 47.6, this disposition
is not citable as precedent.  It is a public record.

# United States Court of Appeals for the Federal Circuit

05-3310

ALBERT WHITE,

Petitioner,

v.

UNITED STATES POSTAL SERVICE,

Respondent.

_____

DECIDED:  February 8, 2006

_____

Before GAJARSA, DYK, and PROST, <u>Circuit Judges</u>.

PER CURIAM.

Petitioner Albert White petitions for review of the final order of the Merit Systems Protection Board ("Board" or "MSPB"), sustaining the decision of the United States Postal Service ("USPS") to remove Mr. White from service.  We <u>affirm</u>.

Background

Mr. White began his employment with the USPS in 1973 and suffered an initial job-related injury in June 1990.  On June 13, 2000, Mr. White was offered a rehabilitation assignment as a Modified Carrier due to the 1990 occupational injury.

Mr. White subsequently reported an occupational injury occurring on October 1, 2001, arising from an attempted robbery in the workplace, and filed a claim for

compensation under the Federal Employees' Compensation Act ("FECA") for this injury. The Office of Workers Compensation Programs ("OWCP") accepted Mr. White's claim based on his psychiatric injury, and he remained on leave without pay ("LWOP") status from that time forward.

On November 3, 2003, a Human Resources Specialist at the USPS submitted a letter to the Manager of Safety and Risk Management entitled "Request for Separation" in which she requested approval to separate Mr. White based on section 545.91-93 of the United States Postal Service, Employee and Labor Relations Manual ("ELM"). Thereafter, the USPS issued him a Notice of Proposed Separation citing as reasons for the separation Mr. White's leave due to his injury for more than two years, his physically inability to perform the duties of his position, and the low likelihood that he would fully recover in the near future. In a Letter of Decision dated February 13, 2004, the proposed separation was made final with an effective date of February 21, 2004. The letter also informed Mr. White of his rights regarding disability retirement, reappointment, and appeal.

On March 16, 2004, Mr. White filed an appeal with the MSPB. In the November 3, 2004 initial decision, the administrative judge limited his consideration to two issues:

> (1) whether the medical evidence relied upon by the agency in bringing the present action establishes by preponderant evidence that the appellant is physically unable to perform the duties of his position; and (2) whether there is any legal authority that bars the agency from bringing the present action because of [Mr. White's] receipt of OWCP benefits.

White v. U.S. Postal Serv., No. SF0752040305-I-1, slip op. at 2-3 (M.S.P.B. Nov. 3, 2004) ("Initial Decision"). The administrative judge sustained the removal, concluding that the USPS had demonstrated by a preponderance of the evidence that Mr. White was unable to perform the duties of his prior position and that removal was appropriate.

The administrative judge also noted that Mr. White provided no authority for his argument that an agency may not terminate an employee for physical inability to perform if he is receiving OWCP benefits. Id. slip op. at 5 n.3.

Mr. White petitioned for full board review of the administrative judge's decision. The MSPB denied the petition for review on June 20, 2005. White v. U.S Postal Serv., No. SF0752040305-I-1, slip op. at 2-3 (M.S.P.B. June 20, 2005). Thereafter, the administrative judge's initial decision became the final decision of the Board. 5 C.F.R. § 1201.113 (2005). Mr. White timely petitioned this court for review of the MSPB's final decision.

Disscussion

This court has jurisdiction to review a final order or decision of the Board under 5 U.S.C. § 7703(b)(1). In reviewing the Board's decision, this court

> shall review the record and hold unlawful and set aside any agency action, findings, or conclusions found to be
> (1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;
> (2) obtained without procedures required by law, rule, or regulation having been followed; or
> (3) unsupported by substantial evidence . . . .

5 U.S.C. § 7703(c) (2000).

Mr. White argues that the MSPB applied the wrong regulations in determining whether he could be terminated. His arguments center on his belief that an employee cannot be separated for physical inability to perform his work due to an OWCP compensable injury. As discussed below, Mr. White appears to confuse his rights to reinstatement with a right not to be terminated from his employer.

A

First, Mr. White cites three MSPB cases as authority for the proposition that an employee may not be terminated from his employment for an OWCP compensable, injury. These cases, however, require only that when an employee <u>is</u> separated for reasons substantially related to his compensable injury, he is entitled to priority restoration rights. <u>Roche v. U.S. Postal Serv.</u>, 828 F.2d 1555, 1557 n.6 (Fed. Cir. 1987); <u>McCoy v. Dep't of Army</u>, 18 M.S.P.R. 636, 638 (1984); <u>Ruppert v. U.S. Postal Serv.</u>, 8 M.S.P.R. 593, 595-96 n.2 (1981).

Second, Mr. White argues that OWCP regulations do not permit termination due to an OWCP compensable injury, but points to no particular regulation as support. Indeed, OWCP regulations are not inconsistent with separating an employee receiving worker's compensation due to the injury for which compensation is based. Under these regulations, if an employee has been separated, he may apply for reinstatement to the employer once he experiences a partial or full recovery. See discussion below.

Third, Mr. White argues that termination for an on-the-job injury is not permitted by Article 13 of the collective bargaining agreement under which he is covered. Article 13 of that agreement, however, refers to reassignment requests of employees performing the regular duties of their positions, not to employees already out on leave due to an injury. The section of the agreement applicable to on-the-job injuries is Article 21, section 4, which requires the USPS to promulgate regulations in compliance with OWCP regulations. The USPS has issued such regulations governing compensation of employees for work injuries, namely section 540 of the ELM. This section also lays out procedures for removal of an employee on prolonged leave due to on-the-job injuries. <u>See</u> ELM § 545.9.

B

Mr. White also appears to argue that he was not properly terminated under USPS procedures in the ELM because his doctor recommended that he be "phased back into the workforce." (Petr.'s Br. 3.) He therefore submits that the USPS should have accommodated him in some position, and the USPS and MSPB erred in finding that he was physically unable to perform his job.

Under the ELM policies, an employee on leave due to an OWCP compensable injury for more than one year may be separated from the USPS. ELM § 545.92. The requesting official must initiate proceedings in accordance with the procedures in section 365. Id. § 545.93. The regulation states:

> If an employee on the rolls of the Office of Workers' Compensation Programs (OWCP) is unable to return to work at the end of the initial 1-year period of LWOP, the LWOP may be extended for successive additional periods of up to 6 months each. Extensions are granted only if it appears likely that the employee will be able to return to work within the period of the extension. <u>If it does not appear likely that the employee will be able to return to work during the period, the employee, upon approval of the area manager of Human Resources, is separated subject to reemployment rights.</u>

Id. § 365.342(b) (emphasis added). USPS regulations are in accordance with the OWCP regulations which do not forbid termination of employment due to a compensable injury.

From October 2001 through 2003, Mr. White's treating psychologist, Dr. Nerenberg, diagnosed him with a "total disability." Initial Decision, slip op. at 4. On January 13, 2004, a month after the proposed removal letter, Dr. Nerenberg wrote that Mr. White "continues to suffer from depression and PTSD. However, he has improved to a point whereby as of 5/1/04 he should be able to handle four hrs a day of work-

related responsibilities in terms of rehab, light-duty assignment." Id. slip op. at 5.[1]  The MSPB held that "this vague statement provides no basis for concluding that the appellant could return to any of his former duties as a City Letter Carrier." Id.[2]

Under USPS procedures, the Board's conclusion was not arbitrary or capricious and was supported by substantial evidence.  A single statement from his psychologist that Mr. White "should be able" to handle four hours a day of "work-related-responsibilities" do not make it "likely that the employee will be able to return to work," as required by the ELM policy.  Indeed, the administrative judge considered medical records spanning the entire term of Mr. White's leave from the USPS to reach this conclusion.[3]

---

[1]  Mr. White submitted additional documents on November 16 and December 13, 2005.  Both submissions occurred after the time permitted for him to file a reply brief.  See Fed. Cir. R. 31(e)(3); Guide for Pro Se Petitioners and Appellants, number 14 (requiring filing within fourteen days after respondent's brief is served, in this case November 9, 2005).  The court therefore treats these submissions as motions to supplement the record.

The additional documents submitted included correspondence with the OWCP and medical evaluations, all occurring on or after September 30, 2005.  A petitioner may "not attempt to supplement the record on appeal with new evidence that was not considered at [his] hearing or trial."  Id. at number 13.  Therefore, Mr. White's motion is denied with respect to these filings.

Mr. White also submitted additional arguments and legal authority.  The motion to supplement is granted with respect to these submissions.

[2]  The USPS and MSPB treated Mr. White's work-related mental trauma no differently from a physical injury resulting in an inability to work, but did not confuse his mental trauma with his former physical injury as Mr. White claims.

[3]  Mr. White's current continued status as a recipient of OWCP compensation further supports the contention that it was reasonable to conclude, in January 2004, that he could not likely return to his position within six months of his proposed separation.

C

Mr. White also argues that the USPS had a responsibility to search for and offer him a job while he was on leave. However, OWCP regulations require the employer to 1) reinstate a fully recovered employee that applies for reinstatement, and 2) seek a suitable position for a partially recovered employee upon notice from the OWCP or an attending physician. 20 C.F.R. §§ 10.505, 10.507 (2005). Mr. White continues to receive OWCP payments, and neither he nor the OWCP has sought his reinstatement under applicable procedures. Therefore, the USPS had no responsibility, under the asserted regulations, to try to place him in a position, as Mr. White urges.[4]

It appears Mr. White's real concern may be that he will be precluded from reinstatement to the USPS once he recovers because he will be off the rolls. However, an employee receiving benefits from OWCP retains a priority right of reinstatement when he has fully or partially recovered from the compensable injury. Id.; 5 C.F.R. § 353.301 (2005). If he seeks reinstatement and is denied, Mr. White "could appeal the denial of restoration rights if he could show that his removal was the result of a compensable injury or was substantially related to a compensable injury." Roche, 828 F.2d at 1557.

Conclusion

For the foregoing reasons, we affirm the decision of the Board.

No costs.

---

[4] This case involves no claim that the agency has violated its duty under the Rehabilitation Act or has otherwise discriminated against the petitioner.